Good morning. May it please the Court. My name is Thomas Busey. I represent the plaintiff, appellant, Ronita Elliott, in this matter. This is an employment discrimination, age discrimination claim brought by Ms. Elliott. She was born on December 10th, 1997. She was born in 1963. She possesses an associate's degree, a bachelor's degree, and a master's of science degree. She went to work for UIL Holdings in January of 2008, and she has remained employed there to the present date with the original UIL, which then merged with Avangrid, the present name defendant. Her job was HR recruiter, human resource recruiter. She worked for UIL Corporation as part of Avangrid from 2017 to 2018 as an HR analyst, and then for Avangrid from January of 2020. Can I just try to focus you? I know there are a lot of positions, so I just want to make sure I understand the buckets of positions that she's alleging the failure to promote based upon age. First, three of them, I think, are time-barred. I think you agree that three of them are time-barred.  Okay. Out of the 13. Three, they point out, the district pointed out, that she never applied for. That's correct. And although there's a narrow exception when someone doesn't apply for, I'm not sure I understand how she qualifies for that exception. Can you address that?  She never applied. She never applied. She was interested in the position a year or two earlier when there was a posting for it, and she was advised by human resources. She did not have the qualifications. Well, there was two people that told her, alleged told her that, Ms. Kogan and Ms. Musa Grosso. But then a lot of time passes, the vacancy opens again, and a different person is making the decision, Mr. Bogue, I guess. Yes. So that's a very narrow exception. If someone discourages you from applying to a job, it can't be that you can bring up the age discrimination case forever with respect to that position, no matter how many times it opens, even though it's different decision-makers, right? What triggered her applying or bringing the claim for those two positions was the fact that she was told earlier that she had lacked the qualifications. And then when she saw — It was a different person that was going to now make the decision, right? Yes, but the person was her supervisor, and she believed that the person was talking with some authority. Yes. And then when she was told that she had been interviewed for, that she did apply for, the district court determined that there was no evidence that the hiring managers knew her for her age, that they did not interview her so they couldn't see her physically, and there's no evidence in their paperwork that they knew her age. So how do you overcome that? She worked for this company since 2008. This was 10, 12 years later. The hiring managers testified that they didn't meet her, weren't aware of her age, and there's no evidence that the personnel files were made available to them. I understand that, Your Honor, but to deny that you know somebody's age in an affidavit creates an insurmountable barrier to somebody bringing an age claim. No, you could have — did you depose any of them? Yes. Did you ask them that question in a deposition? Well, I — Mr. Bowden, I believe, we deposed him. Yeah. We questioned him about the information that — or the answers submitted to the administrative agency that they lacked sufficient information as to the age of the various parties. I know, but it's not impossible to prove that someone had access to the file that had their age in it or, indeed, accessed it, right? You could ask the human resources, did you give this file to any of the hiring managers? There's a lot of ways to prove that they had access to and reviewed them. Well, if they denied that they had access, yeah. Right. But you can disprove that, can't you, through discovery? On what basis? They don't leave a trail of access to the file. Whoever keeps — the HR department, who keeps the file, you could depose them. Yeah. And then on the one that she was interviewed on, I know you're focused on the e-mails that show that they were thinking of hiring your client for the financial reporting role, but when you look at the e-mails, I don't know where you see the inference of age discrimination. In the e-mails, the decision-maker says, I'm thinking of hiring Ms. Elliott, but there's another person who I encouraged to apply. He didn't apply. Check with him to make sure that he doesn't want to apply. They're actually concerned that he would be upset that he wasn't given a chance. So this is someone who's prepared to hire a client. She interviews the other guy, and then there's an e-mail, a contemporaneous e-mail, saying he was really good and I think he's better. So where is the inference of age discrimination based upon that e-mail? The contemporaneous e-mails, there's no indication that she was concerned with the qualifications of Ms. Elliott. That's a different issue. But in the affidavit — she said she lacks the qualifications for the position. She was going to offer her the position right up to the very end. I thought, counsel, the record was that she interviewed the successful candidate and thought that he did better and was better qualified for the position. And then she did subsequently hire your client and give her a position, correct? And not — It wasn't a promotional position she was hired to. It was a lateral position. But she hired her for a position, a type of position she had been applying for, correct? She applied for it because she was hitting a ceiling in the other division, and she wanted to move out of that division. Right. So she had applied for similar positions, and she was, in fact, hired for a position by this person, correct? That's correct, Your Honor. How does that play into the lack of inference of discrimination with regard to the earlier position? She did interview her and did not find her to be as qualified. Your Honor, I think if you look at the timeline, it was after the plaintiff complained about not being promoted that then she was offered this lateral position. I just want to go back to this e-mail listed on the appendix, page 431. After she interviews this other candidate, she says, I just interviewed him. He actually did very well and has more experience with what the duties are than Ronnie. So this is a contemporaneous — I know you say in your papers that she created reasons later in her affidavit, but this was her contemporaneous reaction minutes after the interview. And she says at the end of the e-mail, let's not tell Ronnie because she doesn't know if he's going to take the position or not, because if he doesn't take it, I'm going to offer her the job. So that hardly seems like someone who's decided they're not going to hire a client because of her age. Your Honor, if you look at the totality of the explanation, including the affidavit she submitted, claiming that Ronnie did not have the background, the learning curve would have been extensive, but the same person who's saying that was ready to offer her the position. I thought she was saying that as compared to him, not that she couldn't do it at all, but as compared to him, she didn't have the right background. He had a much better background. I don't believe the affidavit compares her to him with regard to the lack of — basically the lack of any qualifications, but the same person is saying I'm going to hire her and was on the verge of hiring her. And you've reserved three minutes for rebuttal.  Thank you. Thank you, Your Honor. Good morning, Your Honors. Laura Mastroni representing the defendant Appellee here, Avangard Management Company. I think you've hit on a number of the points that I was going to, so I won't belabor, but we do think this decision was well-reasoned, thorough, and should be upheld. I think the court went out of its way to kind of give the benefit of the doubt on many of the issues that were raised by the plaintiff. For instance, the court noted that the fact that — we had raised the fact that hiring managers were over 40 was something to be considered, and the plaintiff said, well, that's not dispositive, and the court said, you're right, not dispositive, but just a consideration. The court also held that all but one of the successful candidates were substantially younger, even though we argued against that as well, and the court said, okay, I'll give you the benefit of the doubt on that as well. The court found two of the roles had the temporal proximity. The two roles that she had raised had temporal proximity to create the prima facie case. So I think the court really went out of its way to say, even if, right, even if you're right on these things, I don't think you're right, but even if you're right, your claim still fails. So, you know, I think that, again, go ahead. A question I have is this claim of the folks making the hiring decisions didn't have access to Ms. Elliott's personnel file and didn't know her age. Now, some of them said they had never met her before.  But this day and age, it's very easy to find someone's age. You can look at a resume, and if somebody graduated college 20 years earlier, unless they're a prodigy, they're probably, you know, past the age of 40. Should that be the deciding factor on a prima facie case, or, you know, how would you respond to that if that were troubling? Yeah. No, I understand. That's a fair point. But there was no evidence presented that they were aware of her age. Only our evidence presented that they were not, right? Many of them, other than Mr. Bogue, none of the other hiring managers were even deposed. So there's no evidence in the record that they had knowledge of her age other than, hey, they could have had access to her personnel files. But there was actually no evidence for that either, other than Mr. Bogue's testimony that didn't actually say that. So I think, you know, our evidence has to be what's taken. Was there any evidence in the record about what they, like, was there a procedure, what packets they got for the interviews or anything like that, like what they had in front of them? There was nothing. No. Nothing in the record on that. Could you address the correspondence between Lyons and Pippin? I mean, this is in a context where the person in the hiring position was indicating that the plaintiff was qualified for the job and was indicating a willingness to hire, and how should we evaluate the correspondence? Sure. I think the correspondence is actually consistent with a lack of discrimination. You know, she was saying that, hey, you know, I will hire her if, you know, he declines, but I'd like to give him the opportunity. I do think he has, you know, more qualifications. She interviews him, and it turns out that is, in fact, the case. You know, but if he declines, I'm still willing to hire Ronnie. But she felt that, you know, in fact, he was more qualified. I think it's completely consistent with our argument, which is she was not as qualified as the successful candidate. So I don't think the e-mails really show any discriminatory intent. Mr. Busey says in her affidavit, I don't have it in front of me, but he says that she said that she was not qualified. Not that he was more qualified, but that she was not qualified. Is that what she said in the affidavit? I don't have that in front of me, either. But, I mean, I think the – Because that would be inconsistent with the e-mails then, because in the e-mails she was suggesting, she was qualified, right? She was – I would say yes, but felt – the whole reason she was interviewing someone else is because she thought he might be more qualified, right? She saw his qualifications and thought, you know what, I want to give him a shot at this. And again, you know, that's exactly what we're saying, right? That ultimately he was more qualified. Any other questions? Okay, I think you guys have really hit on the points that I was going to in the initial argument. So, absent any other questions, I will turn it back over to my colleagues. We'll hear it better. Thank you. Quoting – I don't have the after date in front of me, but quoting – I had quoted it. I was afraid to bring a bundle down to this, because they said no bags. Yeah, this is not the day to bring bags, right? Said she stated in the after date that Ms. Elliott lacked the qualifications to succeed in the role. That's the same individual who in the contemporaneous e-mail said, I'm prepared to hire Ronnie to the role that she's not qualified to succeed in. As to the knowledge of age, there's no question that there was corporate knowledge of the age. I'm sorry, there was what type? Corporate. The corporation had knowledge of Ms. Elliott's age. And based on that information, that there was corporate knowledge, there should be finding that at least for a prima facie case, it survived. It's not a situation – I know the one case, Woodman, I believe it is, dealt with a merger of two companies. And the court said the person who made the decision to lay off the plaintiff in that case didn't have knowledge and wouldn't have been aware because of the merger with the company, the original company that had that information. We've never seen it. Is your colleague right that there's no evidence as to what was distributed to job managers?  So there's no evidence in the record about their receiving a resume or anything like that? That's correct. On discovery, you could have asked Judge Kahn, to get to Judge Kahn's point, if it was a resume they had the year they graduated and things like that. You just said we want production of what items they had with respect to each candidate in front of them. Well, the candidate has to submit an application. So the application would show the year they graduated and things like that. But do you have that or you don't have that? No, I don't have that. Thank you, Your Honor. Thank you both. We will take the matter under advisement.